GIRARD LIFE INSURANCE, ANNUITY & TRUST CO. *et al. v.* COOPER *et al.*

(*Circuit Court of Appeals, Eighth Circuit.* July 5, 1892.)

No. 109.

**1. REFERENCE—CONSTRUCTION OF ORDER—APPEAL.**
On a petition by contractors against the receivers of a railway to secure payment for the erection of a building, the court referred the cause to a master to ascertain the amount "justly and equitably due as the true value of the work done and materials furnished." The master found the work was done under a contract between the receivers and 'the builders, refused to hear evidence as to value, and reported the contract price as the amount due. The court, after a hearing on exceptions, confirmed the report, and entered judgment thereon. *Held,* that while the order of reference was open to the construction that the actual value of the work and material was to be ascertained, yet as the trial court had held that it was not intended to bear so broad a construction, and had confirmed the report, an appellate court would not be justified in holding the contrary, where no injustice had resulted.

**2. CONTRACT—EVIDENCE TO ESTABLISH—MASTER'S FINDINGS.**
While certain railroad buildings were in course of construction, a foreclosure suit was instituted against the railroad company, and two receivers were appointed. Shortly afterwards, by a joint letter, the receivers notified the builders to stop work, stating that they would later furnish designs and directions for completing the work, "and you will name a gross sum for the performance of the same, which will be submitted to the court for approval." New plans and specifications were then prepared and approved by the court, and an order was entered directing that the buildings be completed in accordance therewith. The receiver in active charge of that portion of the road notified the builders of this order, and soon afterwards they answered by letter submitting a bid for which they would complete the work on the new plans. The active receiver testified that the receivers accepted the bid, and that a formal contract was prepared, and was signed by the builders, but was never signed by the receivers. Relying on this contract the builders completed the work. The other receiver testified that he knew nothing of the bid, but that he afterwards saw the work going on, and assumed it was with his colleague's concurrence, and without any estimates or contract. *Held,* that these facts were sufficient to justify the master in finding that the work was completed under a binding contract with the receivers.

**3. RECEIVERS—REPUDIATION OF PENDING CONTRACTS.**
A builder who is engaged, under contract, in erecting a building for a railroad company at the time that receivers are appointed for the road, is entitled to remuneration on the basis of the contract price for the work done after the receivers are appointed, and before they make a new arrangement with him or notify him to stop work.

Appeal from the United States Court in the Indian Territory. Affirmed.

*J. W. McLoud* and *S. A. Gilbert,* (*Samuel Dickson,* of counsel,) for appellants.

*L. P. Sandels* and *A. G. Moseley,* (*Sandels & Hill,* on the brief,) for appellees.

Before CALDWELL and SANBORN, Circuit Judges, and SHIRAS, District Judge.

SHIRAS, District Judge. The Choctaw Coal & Railway Company, a corporation created under the laws of the state of Minnesota, with the right, among other things, to build and operate railways and to own and develop coal mines, was authorized by the acts of congress approved February 18, 1888, and February 13, 1889, to construct a railway within the Indian Territory. In connection with the building and operation of the line of railroad and the development of its mining interests, the company, in May, 1890, undertook the erection, at South McAlester, in

the Indian Territory, of a building to be used as an hotel and for offices for the company, and entered into a contract with W. H. Cooper & Son for the furnishing of the greater part of the work and material needed in the erection of the building, which was called the "Kali Inla Hotel." For the purpose of securing the holding of terms of the United States court at South McAlester, which it was believed would add to the business of the railway and otherwise benefit the company, it was promised on behalf of the company that if congress would provide for holding court at South McAlester accommodations for the court and its officers would be furnished free of cost to the United States, and congress, accepting the proposition thus made, designated South McAlester as one of the points for holding court within the Territory. The company thereupon determined to appropriate part of the building in process of erection to the use of the court and its officers.

In December, 1890, a bill in equity was filed in the second judicial division of the United States court for the Indian Territory, wherein Langhorne Wister and the Girard Life Insurance, Annuity & Trust Company of Philadelphia were complainants, and the Choctaw Coal & Railway Company was defendant, one of the objects of the suit being to foreclose a mortgage given by the company upon its property to the Girard Company as trustee. On the 8th day of January, 1891, E. D. Chadick and Francis I. Gowen were appointed by the court receivers of the property of the company, with authority to carry on the business of the corporation in all its branches, and to appoint such agents as the company had done and as were necessary in the proper conduct of the business. On the 3d day of June, 1891, the receivers notified the contractors, Cooper & Son, to stop work upon the building known as the "Kali Inla Hotel," such notification being in writing, and reading as follows:

"SOUTH MCALESTER, IND. TER., June 3d, 1891.

"*Messrs. W. H. Cooper & Son, South McAlester, Indian Territory*—GENTLEMEN: Under direction of the court we notify you to stop all work on the Kali Inla Hotel from this date, and make out your bill for the work done up to and including to-day. We will then furnish you with designs and directions as to the work to be done, and you will name a gross sum for the performance of the same, which we will submit to the court for their approval or disapproval.        Yours, truly,

"EDWIN D. CHADICK,
"FRANCIS I. GOWEN,
"Receivers Choctaw Coal & Ry."

Upon receipt of this letter, Cooper & Son ceased work upon the building, and made out a bill or statement of the sum then due them, which was approved by the auditor of the receivers. On or about June 7th H. W. Cox, who acted under the receivers as a supervising architect, furnished to Cooper & Son the details and specifications of the work required to be done to fit the building for occupancy by the court and the officers of the company, and Cooper & Son agreed to do the work thus called for for the sum of $10,250; and on the 7th day of July 1891, a contract in writing was drawn up, whereby Cooper & Son agreed to do

the work and furnish the materials called for by the specifications prepared by the architect, and the receivers agreed to pay therefor the sum of $10,250. This contract was signed by Cooper & Son and by H. W. Cox, as supervising architect, and the contractors proceeded with the work therein called for with the full knowledge and approval of E. D. Chadick, the receiver who then had immediate charge and supervision of the work being done upon the railway line. It also appears that the plans and specifications in question had been submitted to the judge of the court having charge of the trust, and the same were approved by him, although no record entry of such approval was made at the time.

Upon the completion of the building, according to the plans prepared by the architect, possession of the same was surrendered by the contractors, and it has since been used and occupied by the court and by the officers of the company and of the receivers. Cooper & Son made out their bills for the sums due them for work done since June 3, 1891, which were certified as correct by the architect having supervision of the work done in remodeling the hotel building. For the purpose of procuring payment of the sums claimed to be due them, the contractors filed a petition in the foreclosure proceedings, setting forth the facts and praying for an order upon the receivers directing them to make payment of the sums claimed to be due, and further praying that a lien in their favor be established upon the building, and for other relief; to which petition Francis I. Gowen, as receiver, and the Girard Trust Company, as trustee, filed answers; and thereupon the court entered an order directing "that the claim of W. H. Cooper & Son be referred to the master to take testimony thereon, and to ascertain the amount justly and equitably due as the true value of the work done and materials furnished by them upon and for the Kali Inla Hotel building at South McAlester, and that receivers' certificates bearing 7 per cent. interest be issued and delivered to them for one third of the amount so found to be due, and to sell and deliver in settlement thereof lumber at the market price thereof for one third of said amount, and the balance in cash to be borrowed on certificates as hereinafter authorized."

A hearing was had before the master, at which counsel for Receiver Gowen sought to introduce evidence on the point of the actual value of the work and materials furnished by Cooper & Son in the erection of the Kali Inla Hotel building, but it was held by the master that, as the evidence showed that the work had been done under a contract, the question was whether the contract had been complied with; that, until the existence of the contract was disproved, it was useless to offer evidence save upon the point whether the work had been done and the materials had been furnished in accordance with the terms of the contract relied on, and upon these points, after hearing the evidence adduced by both parties, the master found as matters of fact that Cooper & Son had done the work and furnished the materials used in said building after June 3, 1891, in reliance upon a contract entered into with them by the agents of the receivers, and with their knowledge and approval; that the work done and materials furnished were in accord-

ance with the plans and specifications approved by the receivers and the court; that the work so done had been delivered to the receivers: that there was due to Cooper & Son the contract price of $10,250, and the further sum of $842.74 for extra work done under a provision of the contract upon said building; that there was due for other work performed by the contractors a sum sufficient to make the entire amount due, after allowing all credits, the sum of $14,919.37. Exceptions were filed to the findings and report of the master, but the court on the 19th of January, 1892, affirmed the same, and entered a judgment in favor of Cooper & Son for $14,749.45, to reverse which the trust company and Gowen, receiver, have brought the case by appeal to this court.

The first point made on behalf of appellants is that the order of the court made at Ardmore, October 13, 1891, referring Cooper & Son's claims to the master, contemplated an investigation of the entire cost of the hotel building, to the end that the contractors should only be paid the true value of the work done and materials furnished by them in carrying on the work, and therefore the master erred in refusing to hear evidence on this point, and in confining the examination to the questions whether the work and materials were furnished under a contract binding upon the receivers and in accordance with its terms. There can be no doubt that the language of the order is susceptible of the construction claimed for it; but, upon exceptions to the master's report, the court granting the order ruled that it was not intended to bear so broad a construction, and this court would not be justified in holding the contrary, unless it was made clear that injustice has resulted therefrom. In fact, the rights of the parties are dependent upon the questions heard and determined by the master, the primary one being whether Cooper & Son furnished the work and material used in the hotel building pursuant to contracts binding upon the receivers. If Cooper & Son were not acting under a contract, then evidence of the value of the work and materials furnished by them would be pertinent; but if they were acting under a contract, valid and binding upon the receivers, then, as the master held, the question would be whether the work done and materials furnished met the requirements of the contract, in which event Cooper & Son would be entitled to the contract price.

But one conclusion is justified by the evidence on the point whether Cooper & Son were acting under a contract fixing the obligations of the parties. In the letter of June 3, 1891, addressed to Cooper & Son and signed by both receivers, the former were directed to stop work on the hotel building and to make out their bill up to and including June 3d. This was done, and the account rendered was duly certified to by the architect and approved by the auditor of the receivers. The letter of June 3d further notifies the contractors that "we will then furnish you with designs and directions as to the work to be done, and you will name a gross sum for the performance of the same, which we will submit to the court for their approval or disapproval." In a few days after the date of this letter the architect employed by the receivers furnished plans and specifications for the work to be done in remodeling the first

and second floors of the building for·court purposes and for the railway offices, and the same were sent by Receiver Chadick to Muscogee for the examination of the court, and, being approved, the receiver was directed to proceed with the work.   Thereupon the following letter was addressed to Cooper & Son:

"SOUTH MCALESTER, IND.·TER., June 23d, 1891.

"*Messrs. W. H. Cooper & Son, South McAlester*—GENTLEMEN:  We have been advised by Major William Nelson, master, of the following order of the United States court: ' You are hereby directed to finish up court room and all the offices on lower floor of hotel building, and also such rooms on second floor as may be necessary,' in accordance with estimates to be hereinafter furnished.                     Yours, truly,
"EDWIN D. CHADICK, for Receivers."

On June 24, 1891, Cooper & Son answered this letter, as follows:

"JUNE 24th, 1891.

"*E. D. Chadick, Esq., Receiver C. C. & Ry. Co.*—DEAR SIR:  We will furnish all material and complete according to plans and specifications that part of the west half of the hotel building, to be used as U. S. court apartments, for the sum of seven thousand nine hundred and seventy-eight dollars; also the east part of said building, to be used as R. R. offices and auditor's and bank department, as per plans and specifications, for the sum of twenty-two hundred and seventy-two dollars; or both for ten thousand two hundred and fifty dollars.   The company has on hand material to the value of $2,500, which it can furnish, and deduct same from above amount.
"Respectfully,                         W. H. COOPER & SON."

Chadick testified that the receivers accepted the bid thus made; that he could not say that a formal letter of acceptance was written, but it was his impression that he did write a letter in regard to it; that the architect prepared a formal contract in writing, with the plans and specifications annexed, but that the same was never signed by the receivers; that Cooper & Son proceeded with the work, relying.upon the contract agreed upon, and completed the work according to the plans and specifications furnished them.   Mr. Gowen testified that he did not know of the letter of June 24, 1891, in which Cooper & Son stated the price for which they would undertake the work, until towards the end of August; that he knew and saw that work was going on upon the court rooms and offices; that he assumed that Cooper & Son were going on with the work with Mr. Chadick's concurrence, without any regard to the directions given in the letter of June 3, 1891, and without furnishing any estimate or making any contract, after due authority obtained from the court; that he made no protest at the time because he understood the work had to be done, and he felt confident when it came to paying for it the court would 'take care that Cooper & Son would not be allowed any excessive sum.   Thus the evidence shows that the receivers notified Cooper & Son that plans and specifications of the work to be done in remodeling the building would be prepared, upon which they would be asked to state the gross sum for which they would do the work according to the plans submitted; the plans were prepared and approved by the court, of which notice was given to Cooper & Son, who thereupon

stated in writing the sum for which they would undertake the work; that Chadick, who up to that time had been the receiver in active charge of the work in the Indian Territory, accepted the bid made, and directed Cooper & Son to proceed with the work; that Receiver Gowen knew that the work was being done, but made no objection thereto; that Cooper & Son commenced and completed the work called for by the plans and specifications furnished them in the belief that they were to be paid the price stated by them in their letter of June 24, 1891. These facts entirely justify the finding of the master that Cooper & Son, in remodeling the building according to the plans furnished them, were acting under a contract binding upon the receivers. The fact that the formal written contract prepared by the architect of the receivers was not signed by them does not show that an agreement had not been reached.

When the plans and specifications were furnished by the receivers to Cooper & Son, and the latter had stated the gross sum for which they would perform the work called for, the terms of the proposed contract were made plain, and, when Cooper & Son were directed to proceed with the work called for by the plans, the contract between the parties was closed, and the preparation and signing of a formal writing would only have called into existence additional evidence of the fact that the parties had contracted for the performance of the work included within the specifications for the price stated in the letter written by Cooper & Son under date of June 24, 1891. It must, therefore, be held that the work done and materials furnished in carrying out the plans and specifications furnished to Cooper & Son in June, 1891, were so done and furnished under a contract binding upon the receivers, which fixed the price to be paid therefor. The same is true of the work done up to and including June 3, 1891. The evidence shows that when the receivers were appointed Cooper & Son were engaged in the erection of the building under a written contract dated May 23, 1890. The receivers took no steps to terminate this contract until June 3, 1891, when the letter of that date was written, directing the cessation of work, and under the terms of that letter, as applied to the existing facts, it must be held that the contractors are entitled to demand the contract price for the work done after the receivers were appointed and up to and including June 3, 1891. The evidence shows, and the contrary is not claimed by appellants, that the contractors fulfilled the requirements of the plans and specifications under which they undertook the work performed by them, and therefore they have shown themselves entitled to the contract price for the work done, which is all that the decree appealed from awards the appellees.

Exception is also taken to the decree in that it directs that payment must be made on or before February 15, 1892, one third to be paid in receivers' certificates, one third in lumber, and one third in cash, it being urged that thereby an undue preference is awarded appellees over other creditors entitled to payment from the funds under control of the receivers. The general rule is that equality is equity among the creditors of a receiver, who is the representative of the court having charge of

the property that is being administered upon, and therefore, unless there is good and sufficient reason to the contrary, proportionate payments should be made to all creditors entitled to share in the common fund; and this is especially true if there is reason to fear that the fund available may not be sufficient to meet all demands in full. We are not sufficiently advised by the record of the facts in this case to determine whether the decree should be modified in this particular. It may be that the amount of funds under the control of the receivers and the equities of the appellees, as known to the court having immediate charge of the trust property, were such as to justify the order made in this particular. As the time for payment fixed in the decree has already passed, a new order in this particular becomes necessary, which should be made by the court below, and in the making of which due regard should be had to the equities and rights of other creditors as the same may be made to appear before the court.

The decree appealed from is therefore affirmed at cost of appellants, in so far as it awards judgment for the sum therein named in favor of W. H. Cooper & Son; and the cause is remanded to the court below, with instructions to enter an order directing the mode and time of payment, such as the court may be advised is required by the equities of the case.