# WELCH & COMPANY
## *v.*
# CENTRAL SAN CRISTOBAL.

San Juan, Equity, No. 940.

As to Contract Preceding Receivership.

Receiver—Existing Contracts.

1. A receiver has a reasonable time within which to determine whether he will carry out existing contracts, and when so adopted a contract must be carried out in all respects. In such a case he must pay the contract price for the work done after the receivership prior to his election.

Pre-existing Contracts—Adoption.

2. The court may rearrange terms for the part of the contract performed after the receiver's election, acting not on the ground of adopting an old contract, but of doing what is necessary to preserve the property.

Pre-existing Contract—Railroad Iron.

3. Where rails have been furnished prior to the receivership under a pre-existing contract, the debt has no preference. It is not a continuing contract in the sense that it has to be paid for in preference to other contracts.

Railroad—Operating Expenses.

4. The substitution of a heavier rail for a lighter rail cannot be said to be an operating expense, when it appears that the lighter rail could have been still used for that purpose.

Opinion filed July 16, 1914.

Note.—As to receiver's obligation on contract of the party whose property he holds, see note in 16 L.R.A. 90.

*Messrs. Hartzell & Rodriguez Serra* for receiver excepting to master's report.

*Mr. H. G. Molina* for exceptions of Welch & Company.

*Mr. Louis Banigan* in support of master's report.

HAMILTON, Judge, delivered the following opinion:

On May 20, 1912, the Fajardo Development Company and the San Cristobal Sugar Company of New York, later the Central San Cristobal, Inc., entered into a contract by which the sugar company conveyed its railroad and rights of way to the Fajardo Development Company, which was to maintain the railroad, and half the cost of the maintenance was to be borne by the sugar company. There is also a provision that if the development company equipped the line with 45-pound rails, the cost would be borne equally by both parties, and the old rails become the property of the San Cristobal Company. The line was equipped with such rails and the bill for half the cost, that is $4,104.06, was presented to the San Cristobal Company, and old rails turned over, while it was still a going concern. This expense was duly proved as part of the claim of the development company.

The special master reported in favor of the allowance of the claim, and exceptions were duly filed. No question is raised as to expenses since the time of receivership. If these have not been paid, they should be, and no doubt will be. The sole point before the court is as to one half of the cost of the rails substituted anterior to receivership.

Welch & Co. v. Central San Cristobal.

1. There is no question that a receiver has a reasonable time within which to determine whether he will carry existing contracts or not. In this case he has elected to do so. There is no question also that the contract when so adopted must be carried out in all respects. The receiver cannot adopt in part and disaffirm in part. If there are any conditions attached to the contract, he must carry them out. Sunflower Oil Co. v. Wilson, 142 U. S. 313, 35 L. ed. 1025, 12 Sup. Ct. Rep. 235; 3 Street, Fed. Eq. Pr. § 2641. And there is also no question that a receiver so electing to carry out a contract is liable for the payment of the contract price for so much of the work as is done after receivership, but prior to his election. Girard L. Ins. Annuity & T. Co. v. Cooper, 2 C. C. A. 245, 4 U. S. App. 631, 51 Fed. 332.

2. The point raised by the exceptions, however, relates not to anything done after the receivership, but to what was done before the receivership, and the argument is that this is a continuing contract, one of such a character that the part of it executed before the receivership is of the same dignity as that performed after the receivership; that there can be no line drawn in the execution of the contract; that if there is a lien to be allowed by the court for one part, the same reasons apply for allowing a lien for the other part. This, however, is not clear. The reason why the court orders payment for what is done after the appointment of the receiver is that this is for work in effect ordered by the court itself. It is a receivership or operating expense. This is not on the ground that the court is making or adopting an old contract, but that the court finds it necessary, in order to preserve the property, that certain things be done, and, of course, it will under the circumstances

pay for what it orders to be done.   It has not, however, ordered anything that was done before the receivership.   It is true there may be some valid lien already on the property which the court should respect; but even if this is done, it is because the lien is already there, not because the court creates one.

3. In this case there is no lien by contract or by law for the cost of the rails which were put down.   It is a contract debt and, of course, should be respected to the utmost.   It does not appear, however, that it is a contract debt of any higher dignity than any other which has been filed in the case.   It amounts to a promissory note, but a promissory note, unless otherwise arranged, carries no lien.   It is true that the contract which has been adopted is a continuing contract, but this is probably true of every contract which the receiver may elect to perform as advantageous to the trust.   If electing to perform a contract gives a lien for work already done under it before the receivership, the result would be that the court could sanction no contracts at all, and would have to direct the receiver to make new ones with new people for all necessary matters.

The fact is that a receivership does fix a gulf between the present and the past, and what is done during the receivership, throws back no light and confers no additional sanctity upon anything that has been done before the receivership.   No authority has been cited contrary to this principle.   United States Trust Co. v. Mercantile Trust Co. 31 C. C. A. 427; 59 U. S. App. 330, 88 Fed. 140, refers to taxes, which always stand upon a different footing from other claims.   Neither this nor any of the other cases cited would authorize the preference of a claim under a contract because antedating the receivership. High, Receivers, §§ 273, 327; 34 Cyc. 258.

Welch & Co. v. Central San Cristobal.

It is unnecessary at this time to re-examine the question whether the principle of paying for operating expenses out of current income which has been diverted applies to such a corporation as the defendant in this case. There is no question and no proof that there has been any such diversion of income in this case.

4. It is urged that the claim of the Fajardo Development Company comes under the rule of Gregg v. Metropolitan Trust Co. 197 U. S. 187, 49 L. ed. 717, 25 Sup. Ct. Rep. 415, in that it is an operating expense of a public service corporation incurred within six months before the receivership. It would not appear, however, that it is an operating expense. The claim as argued relates to the heavy rails substituted for the lighter rails, and this is part of the contract. There is nothing to show that the railroad could not have been operated for the purposes for which it was designed with the old rails. In point of fact, it appears that these old rails have been sold by the receiver to a purchaser for further railroad purposes, which would tend to show that they could have been so used, even up to the present. The claim, therefore, cannot be said to relate to operating expenses, and it is not necessary to determine whether the Fajardo Development Company as to such expenses comes within the rule of the Gregg Case. As I understand it, no question is involved of operating expenses in the proper sense of the word.

It follows that the exceptions must be sustained, and the preference given by the master to the claim of the Fajardo Development Company disallowed.