UNITED STATES TRUST CO. v. MERCANTILE TRUST CO. et al.

(Circuit Court of Appeals, Ninth Circuit. May 2, 1898.)

No. 379.

1. EQUITY—CONCLUSIVENESS OF MASTER'S FINDINGS.
Where, by stipulation and order of court based thereon, the cause is referred to a special master to take the proofs "and report the same to the court, with his findings of fact and conclusions of law thereon," the master's findings of fact are conclusive upon the court, so far as they are based on conflicting evidence, or the veracity of witnesses, or so far as there is evidence consistent with the finding. But this rule is confined strictly to findings of fact and does not include the interpretation and legal effect of documents, nor is it applicable when, by subsequent stipulation, additional evidence is introduced before the court.

2. RAILROADS—CONTRACT OF SALE AND LEASE.
One railroad company, by written contract, agreed to sell to another, and the latter agreed to buy, part of its road at a fixed price, but the contract recited that, owing to mortgages on the property, the vendor could not then make a clear title; and it was therefore further agreed that in the meantime it should lease the road to the purchaser at a fixed rental per mile. The provisions in relation to the sale and to the lease were kept distinct throughout the instrument, and a right was reserved to the lessor to re-enter for nonpayment of rent, etc. *Held,* that, prior to the time when title could be transferred, the relations of the parties were those of lessor and lessee, and that, even if the contract of sale was ultra vires the lease was valid.

3. SAME—LIABILITY OF LESSEE FOR TAXES.
A railroad company leased part of its road to another company, the lessee agreeing to pay all taxes assessed against the leased property. Under the local laws taxes on the leased line were assessed to the lessor, as owner, in the same manner as the taxes upon the part of its road not leased; and

in the course of business the lessor paid all the taxes and then rendered bills to the lessee for the proportion due from the leased line. The assessment of all the property of the lessor, including the leased line, having been raised, it contested the same, and after long litigation the assessment was sustained. In the meantime receivers had been appointed for the lessee company, and they had remained in possession of the leased road, and had raised money to pay other taxes thereon by issuing receivers' certificates. *Held,* that their action was an adoption of the lease, and they were liable, according to its terms, to repay to the lessor their proper proportion of the judgment for the contested taxes.

4. RAILROAD RECEIVERS—ADOPTION OF LEASE—PRIORITY OF CLAIMS—TAXES.

Where one of the conditions on which receivers are appointed in railroad foreclosure proceedings is that they shall pay all claims for taxes, and the receivers adopt the provisions of a lease by continuing in the possession and operation of the leased line, a claim for taxes which the lessor company has been compelled to pay, and which, by the terms of the lease, the lessee is bound to refund, becomes entitled to priority over the mortgage debt.

5. JUDGMENT—COLLATERAL ATTACK—EVIDENCE.

In a suit by a lessor railroad company to recover, under the provisions of the lease, taxes on the leased property which the lessor has been compelled to pay by the judgment of a court of competent jurisdiction, evidence as to the assessable value of the leased line is inadmissible as being, in effect, a collateral attack upon the assessment and upon the judgment in favor of the state for the amount of the taxes.

6. RAILROAD LEASE—CONTEST OF TAXES BY LESSOR—ATTORNEY'S FEES AND COSTS.

Where a lessee railroad company is bound by the provisions of the lease to repay to the lessor taxes paid by it on the leased property, and, upon the subsequent increase of the assessment of the leased line, together with other roads of the lessor, the lessee, through its counsel, assents to a contest thereof by the lessor, which contest results in favor of the state, the lessee company, and its receiver subsequently appointed, are liable for their due proportion of the attorney's fees, costs, and interest incurred in the contest.

80 Fed. 18, affirmed.

Appeal from the Circuit Court of the United States for the Southern District of California.

This case comes up on an appeal by the United States Trust Company, one of the defendants in the court below, from an order of the circuit court for the Southern district of California, made and entered April 7, 1897, upon the petition in intervention of the Southern Pacific Railroad Company. The order appealed from directed the receiver of the Atlantic & Pacific Railroad Company, one of the defendants to the bill brought by the Mercantile Trust Company for the foreclosure of the latter's mortgage upon the properties of the Atlantic & Pacific Railroad Company, to pay to the intervener, the Southern Pacific Railroad Company, the sum of $48,683.74, the same being the aggregate amount of the proportion of taxes claimed to be due from the Atlantic & Pacific Railroad Company to the Southern Pacific Railroad Company for the fiscal year 1887–1888, together with a certain proportion for attorney's fees, costs of suit, interest, etc., incurred by the Southern Pacific Railroad Company in contesting and litigating the taxes for the fiscal year 1887–1888. The suit in which the intervention was filed was brought by the Mercantile Trust Company, one of the appellees on this appeal, against the Atlantic & Pacific Railroad Company, to foreclose its mortgage

against the properties of that company, executed on September 1, 1887, and known as the second mortgage. Subsequently, on June 14, 1895, an amended and supplemental bill was filed by the complainant, making the United States Trust Company, the present appellant, holder of the first mortgage against the Atlantic & Pacific Railroad Company, a party defendant. Thereafter, on October 7, 1896, the Southern Pacific Railroad Company filed its petition in intervention, asking that the receiver appointed by the court below be directed, by the order of the court, to pay to the petitioner the gross sum of $48,683.74, claimed to be due for taxes and a portion of the expenses incurred by the intervener in litigating the taxes for the fiscal year 1887–1888, under an agreement existing between the two companies, and dated August 20, 1884. It appears that the receiver himself had previously, on August 25, 1896, filed a petition, stating that the Southern Pacific Railroad Company had made such a demand upon him, and asking for the advice and order of the court as to whether or not he should pay the same. Answers to these petitions were filed by both the United States Trust Company, the present appellant, and the Mercantile Trust Company, one of the appellees. The matter was referred, by the agreement of the parties, to a special master, "to take the proofs of the respective parties, and report the same to the court, with his findings of fact and conclusions of law thereon." On December 11, 1896, the special master duly made his report with his findings of fact and conclusions of law thereon, the effect of which was that he denied and rejected the claim for taxes, etc. Exceptions to some of these findings of fact and to all of the conclusions of law were thereupon filed by the intervener, the Southern Pacific Railroad Company. These came on for hearing before the court below, which sustained all of the exceptions, and made and entered on April 7, 1897, its order and decree, directing the payment of the claim in the full amount of $48,683.74 and costs. See opinion of the court below, 80 Fed. 18. It is from this order and decree that the present appeal is prosecuted by the United States Trust Company, holder of the first mortgage upon the Atlantic & Pacific Railroad Company. The facts of the case bearing more or less directly on the only question at issue, viz. whether or not the claim for taxes, etc., should be paid by the receiver as against the prior mortgage liens, may best be stated in the clear and concise statement of them contained in the opinion of the court below, as follows:

On the 20th day of August, 1884, a contract was made and entered into in writing by and between the Southern Pacific Railroad Company, a corporation organized under and in pursuance of the laws of the state of California, as party of the first part, the Atlantic & Pacific Railroad Company, a corporation created and organized under the acts of the congress of the United States, as party of the second part, the St. Louis & San Francisco Railway Company, a corporation organized under the laws of the state of Missouri, as party of the third part, and the Atchison, Topeka & Santa Fé Railroad Company, a corporation organized pursuant to the laws of the territory and state of Kansas, as party of the fourth part, which recited that whereas, the party of the first part to the contract was then the owner of a certain line of railway in the state of California, particularly described therein; and whereas, it had then been agreed by and between the parties to the contract that such line of

railway should be sold by the party of the first part thereto, and purchased by the party of the second part, upon the terms and conditions therein stated; and whereas, in consequence of the lien then existing upon such line of railway under the mortgage made and executed by the party of the first part, bearing date April 1, 1875, the party of the first part could not then make clear title to such line of railway, it had then been agreed that until clear title thereto could be made, such line of railway should be leased by the party of the first part to the party of the second part upon certain terms and conditions therein stated: and whereas, the parties of the third and fourth parts were then largely interested pecuniarily in the acquisition of such line of railway by the party of the second part "by lease and purchase as aforesaid,"—the respective parties did thereupon, in consideration of the premises and the mutual undertakings and agreements in the contract stated, and for other good and valuable considerations therein acknowledged, covenant and agree to and with each other as follows:

First. The party of the first part agreed to sell to the party of the second part, and the party of the second part agreed to purchase from the party of the first part, the said line of railway, described as extending from the west end of the bridge over the Colorado river at or near The Needles, in the state of California, 242.37 miles, or thereabouts, to the easterly margin of the grounds or yards of the party of the first part used in connection with the Mojave Junction station, or with the main line of railroad of the party of the first part between Goshen and Yuma, together with the right of way therefor 200 feet in width, and the switches, sidings, turnouts, station buildings, section houses, turntables, and other appurtenances, together with the right to connect at Mojave Junction with the tracks of the party of the first part, but excluding the equipment of the road, and any interference with the right of way and depot grounds of the party of the first part at the junction mentioned, at and for the price of thirty thousand dollars a mile (that is to say, seven million two hundred and seventy-one thousand one hundred dollars), of which purchase price one-sixth part (that is to say, one million two hundred and eleven thousand eight hundred and fifty dollars) to be paid in cash, and the remaining six million and fifty-nine thousand two hundred and fifty dollars to be paid by the party of the second part to the party of the first part either in cash or in first mortgage six per cent. bonds of the party of the second part issued under and secured by its first mortgage, bearing date July 1, 1880, the prompt payment of the principal and interest of which to be legally guaranteed by the parties of the third and fourth parts to the contract, respectively; it being expressly agreed that the sale should be consummated and the purchase price of the line of railway paid whenever the party of the first part should be able to make clear title thereto, discharged from the lien of its first mortgage bearing date April 1, 1875, and from all other liens existing thereon at the time of the contract, or which may be imposed thereon by the party of the first part at any time thereafter.

Second. The contract declared that in the meantime, and until the consummation of such sale and payment of the purchase price of the property, the party of the first part agreed to and did lease and demise to the party of the second part, and the party of the second part agreed to and did hire from the party of the first part, from the 1st day of October, 1884, the said line of railway, together with the appurtenances, in the contract agreed to be sold at and for the annual rental of eighteen hundred dollars per mile,—that is to say, four hundred and thirty-six thousand two hundred and sixty-six dollars, payable semiannually during the continuance of such lease; and the party of the second part covenanted and agreed to and with the party of the first part, for itself and its successors and assigns, to pay to the party of the first part, its successors and assigns, as rental for the line of railway and appurtenances mentioned, until the consummation of the sale and the payment of the purchase price, as provided for, the sum of two hundred and eighteen thousand one hundred and thirty-three dollars on the 1st days of April and October in each and every year; and further, for itself and on behalf of its successors and assigns, to further promptly pay and discharge all taxes and assessments which should thereafter become due upon said property, or any part of it, or which might become in any wise due or owing in respect

to the same, and would maintain, repair, and replace such property so that the same should at all times be and remain in substantially as good plight and condition as it then was, the nature and character of the property being considered.

Third. The contract further provided that in case default should be made in the payment of any installment of such rental at the time stipulated for its payment, and such default should continue for thirty days, the party of the first part, its successors and assigns, might thereupon and without demand or other formality enter upon and take possession of the said line of railway, with its said appurtenances, and should be thereafter entitled to hold, retain, and enjoy the same as of its original estate therein; but, notwithstanding such entry, the party of the second part, its successors and assigns, for any and all damage in any wise resulting from the nonfulfillment of the contract, or any wrongful acts or omissions of the party of the second part, its successors or assigns, in respect to the said property, or any part thereof. The contract contained the further provision that, in case of the happening of any such default in respect to the payment of the rental provided for, and the continuance of such default for thirty days, then, and in that event, at the election of the party of the first part, its successors or assigns, the right of the party of the second part to purchase the premises under the provisions of the contract should cease and determine.

Fourth. The party of the third part and the party of the fourth part to the contract, for themselves and their respective successors and assigns, in consideration of their pecuniary interest in the stock and securities of the party of the second part, and their interest in the opening and maintenance of a through line of freight and passenger traffic over their respective lines of railway and over the line of railway then belonging to the party of the first part (the subject of the contract), and for other good and valuable considerations in the contract acknowledged, guarantied to the party of the first part, its successors and assigns, the prompt payment to the party of the first part, its successors and assigns, of the several installments of rental, and of the purchase price therein agreed to be paid by the party of the second part to the party of the first part, and that, in case default should be made by the party of the second part in the payment of such installments or rent, or of any, or of any part, thereof, or in the payment of such purchase price at the time or times stipulated for the payment thereof, the parties of the third and fourth parts, for themselves and their respective successors and assigns, would promptly pay to the party of the first part, upon demand, any and all amounts in respect of which the party of the second part should make such default, which amounts so paid by the party of the third or fourth part should be justly chargeable by the party paying the same against all amounts then due or which might become due from it to the party of the second part for traffic over such leased lines, or any line of the party of the second part, and should be otherwise enforceable as a debt of the party of the second part to the party of the third or fourth part who should have paid the same; it being understood and agreed, however, that the parties of the third and fourth parts should not be liable in solido for such amounts, but that each of such parties should be liable only for the one-half part of the several installments of rent and the purchase price thus guarantied by it.

The contract in question contained other provisions, not important to be specially mentioned. Under and by virtue of this contract the Atlantic & Pacific Railroad Company, on the 1st day of October, 1884, took actual possession of the line of railroad therein described, and its appurtenances, excepting only the equipment thereof, and continued in the actual and exclusive possession, use, and control thereof until the appointment by this court of receivers of the property, since which time the receivers have, respectively, been in such actual and exclusive possession, use, and control. While the Atlantic & Pacific Railroad Company was in possession, use, and control of the line of railroad and its appurtenances extending from The Needles to Mojave, under and by virtue of the aforesaid contract of August 20, 1884, to wit, on the 1st day of September, 1887, it executed a mortgage covering, among other property, its right, title, and interest thereto and therein, to the Mercantile Trust Company of New York, to secure the payment of certain bonds. The

Atlantic & Pacific Railroad Company had previously, to wit, on the 1st day of July, 1880, executed to the Union Trust Company of New York a mortgage to secure the payment of certain other bonds, which mortgage was broad enough to cover, and whose terms did cover, the after-acquired interest of the mortgagor in the line of railroad and its appurtenances constituting the subject-matter of the contract here in question. By virtue of its mortgage, and because the Atlantic & Pacific Railroad Company had made such default in its terms and conditions as entitled it to do so, the Mercantile Trust Company, on the 8th day of January, 1894, commenced suit in this court for the foreclosure of its mortgage and to obtain the appointment of a receiver or receivers of all of the property covered thereby during its pendency. That mortgage covering the entire line of road of the Atlantic & Pacific Company, the principal portion of which is situated in the territories of New Mexico and Arizona, the mortgagee had previously commenced similar suits in the United States courts for those territories, in each of which suits three receivers of the property of the mortgagor there situated were appointed. Of the portion of the mortgaged property situated within this judicial district, this court, in the suit here brought by the Mercantile Trust Company, appointed the same receivers who had been appointed by the court of primary jurisdiction. Those receivers at once qualified, and took possession of such of the line of road as extended from The Needles to Mojave, with its appurtenances. Subsequently, to wit, on June 14, 1895, the Mercantile Trust Company filed an amended and supplemental bill in its suit in this court, in which the United States Trust Company of New York was made a party defendant, as the holder of the first mortgage on the said line of road extending from The Needles to Mojave, with its appurtenances. To that amended and supplemental bill the United States Trust Company appeared by counsel. Later in the proceedings in the suit, one of the original receivers having deceased, and the remaining two having tendered their resignation, this court, following the similar action of the court of primary jurisdiction, accepted their resignations, to take effect upon the appointment and qualification of a successor or successors. Thereupon this court, still following the similar action of the court of primary jurisdiction, appointed C. W. Smith receiver of the property situated within this judicial district, who qualified as such and received from the former receivers herein the possession of said property, since which time he has been, and now is, in its actual and exclusive possession, use, and control. On the 25th day of August, 1896, the receiver, Mr. Smith, filed in and presented to this court his petition, setting forth the contract of August 20, 1884, made and entered into between the Southern Pacific Railroad Company, the Atlantic & Pacific Railroad Company, the St. Louis & San Francisco Railway Company, and the Atchison, Topeka & Santa Fé Railroad Company, and the continuous and exclusive possession, under that contract, of the line of road extending from The Needles to Mojave, with its appurtenances, by the Atlantic & Pacific Railroad Company and the receivers of its property ever since; and further alleging that the receivers so appointed have not disavowed that contract, but, on the contrary, during the receivership, have expressly acknowledged and admitted its terms and conditions, so far as the receivership is concerned. The petition of the receiver further states: That the receivers have at all times promptly paid to the Southern Pacific Railroad Company all taxes paid by it, or claimed to have been paid by it, upon the line of railroad described in the contract of August 20, 1884, including not only taxes assessed and levied for the years in which the receivers have been in possession of that line of road, but also for taxes which were levied and reassessed against the Southern Pacific Railroad Company for the years 1885, 1886, and 1887. That the state board of equalization of the state of California, in August, 1887, for the purposes of state and county taxation for the fiscal year ending June 30, 1888, assessed the Southern Pacific Railroad Company, as the owner and operator of a line of railroad running in more than one county in said state, consisting of 1,022.33 miles in the state of California, together with the franchises, roadway, roadbed, rails, and rolling stock, at the sum of $16,500 per mile, and that included in that assessment and valuation was the line of railroad described in said contract of August 20, 1884. That thereafter, and in due time, the state board

88 F.—10

of equalization of California apportioned of said total assessment of the franchises, roadway, roadbed, rails, and rolling stock of the defendant to the county of Kern the amount of $2,476,945 of said total assessment of the railroad therein of 153.47 miles, and to the county of San Bernardino the sum of $4,220,022 for the railroad therein of 261.47 miles. That at that time, of the line of road described in said contract of August 20, 1884, there was situated 35.64 miles in Kern county, California, and 206.87 miles in the county of San Bernardino, which constituted a part of the said 1,022.33 miles. That from the time of the execution of the said contract of August 20, 1884, to the present time the line of road described in that contract, because of the revenue laws of the state of California, has been assessed by the state board of equalization of the state of California to the Southern Pacific Railroad Company, which has, whenever it saw fit to do so, paid the taxes due upon the line of road described in said contract of August 20, 1884, and made bills therefor against the Atlantic & Pacific Railroad Company and the receivers thereof. That neither the receivers nor the Atlantic & Pacific Railroad Company have ever attempted to pay the taxes thereon, but have always waited until the Southern Pacific Railroad Company should pay the same, for the reason that in each county there were additional taxes against the balance of the lines of railroad belonging to the Southern Pacific Railroad Company, and therefore there was no way of paying the amount due upon the portion of road extending from Mojave to The Needles without paying the entire amount due from the Southern Pacific Railroad Company in each county. That when the taxes became due which were levied and assessed upon said lines of railroad of the Southern Pacific Railroad Company for the year 1888 [1887], the Southern Pacific Railroad Company failed to pay the same, and that said taxes became delinquent on the last Monday of December, 1887, at six o'clock p. m. That the total amount of taxes levied for the fiscal year ending June 30, 1888, against the Southern Pacific Railroad Company for its railroad in the county of Kern was $34,479.07, and that upon the failure to pay the same there was added to it by the comptroller of the state the sum of $1,723.95 as penalty. That there was levied for the same year, in the county of San Bernardino, upon said assessment upon the total lines of railroad belonging to the Southern Pacific Railroad Company the sum of $30,468.56, and that there was added to said amount as a penalty, upon its becoming delinquent, the sum of $1,523.42. That on the 2d day of January, 1891, the state of California caused an action to be brought in the superior court of the state of California in and for the city and county of San Francisco against the Southern Pacific Railroad Company to recover the entire amount of taxes which had been levied in the various counties upon the lines of railway owned and operated by it, including the line of railroad mentioned and described in the written contract of August 20, 1884, and seeking to recover the total sum of $251,134.26, with 5 per cent. penalty thereon, which included the sums so levied in Kern and San Bernardino counties, as aforesaid; and that afterwards, to wit, February 3, 1893, a judgment was duly rendered in the action for the total sum of $251,134.26, together with interest thereon from the 27th day of December, 1887, at the rate of 7 per cent. per annum, amounting to $89,654.91, together with 5 per cent. penalty upon said principal sum, amounting to $12,556.66, and the further sum of $18,835.06 for attorneys' fees, and $42.16 costs against the Southern Pacific Railroad Company. That thereafter an appeal was duly taken from that judgment to the supreme court of California, which court affirmed the judgment (38 Pac. 912) except as to the amount allowed for interest, namely, the sum of $89,654.91, and as to the sum of $6,278.31 allowed as attorney's fees to one A. R. Cotton. That afterwards the Southern Pacific Railroad Company appealed from that judgment to the supreme court of the United States, pending which appeal the operation of the judgment was stayed. That pending the appeal to the supreme court of the United States, and in 1894, the state board of equalization, under an act of the legislature of the state of California approved March 23, 1893, made a reassessment of the taxes due from the Southern Pacific Railroad Company on its system of railroads for the year ending June 30, 1888, and taxes having been duly levied thereon upon that reassessment, the Southern Pacific Railroad Company, in the fall of 1894, paid the first half of the taxes upon such reas-

sessment, and made a bill to the receivers of the Atlantic & Pacific Railroad Company for their proportion, amounting to the sum of $14,902.86, which bill the receivers paid in due time. That thereafter, and in the spring of 1896, the supreme court of the United States affirmed the judgment so appealed from (16 Sup. Ct. 791), after which the Southern Pacific Railroad Company paid the amount thereof, and on the 8th day of June, 1896, made and presented to the present petitioner, as receiver, a bill for the proportion of the taxes which it claimed to be due from the receiver under the contract entered into between the Southern Pacific Railroad Company, the Atlantic & Pacific Railroad Company, the St. Louis & San Francisco Railway Company, and the Atchison, Topeka & Sante Fe Railroad Company. That included in the bill so made is the sum of $5,981.87, as the portion of attorneys' fees collected by the state of California, which the Southern Pacific Railroad Company claims that the receiver should pay, and that there is also added to said bill the sum of $12,580.36 as and for interest on the judgment from the date of its rendition to the date of its payment, at seven per cent. per annum, and being the proportion which the Southern Pacific Railroad Company claims that the receiver should pay. The petition of the receiver further alleges that the action of the Southern Pacific Railroad Company in permitting a penalty to be added to the said tax and in permitting attorneys' fees, costs, and interest to accrue thereon, was without the knowledge or consent of the Atlantic & Pacific Railroad Company or its receivers, in that neither the Atlantic & Pacific Railroad Company nor its receivers had any voice in the matter, nor was that company or its receivers ever consulted about the same. The petition of the receiver further states that the United States Trust Company objects to the payment by the receiver of any part of the bill so presented by the Southern Pacific Railroad Company, and he therefore asks the advice and order of this court as to what he shall do in the premises. The bill presented by the Southern Pacific Railroad Company, concerning which the controversy arises, is as follows:

"San Francisco, Cal., June 8, 1896.

"Atlantic and Pacific R. R. Co. to Southern Pacific Company, Pacific System.

"Amended Bill.

"Charged in
Month of
1896.

June 8. For state and county taxes as paid by Southern Pacific Company under judgment of U. S. supreme court, March, 1896, for the year ending June 30, 1888, on the franchise, roadbed, rails, rolling stock. etc., of the line from Mojave to The Needles.

Valuation returned by the So. Pac. R. R. Co. in 1887 . . . . . . . . . . $ 9,570,200
Roadbed, etc . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $8,182,900
Rolling stock . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,387,300, or 14.50 pr. c.
Original assessment of So. Pac. R. R. Co. in 1887:
Amount of tax, $25,134.26 . . . . . . . . . . . . . . . . . . . . . . . $16,139 60 per mile.
Less 14.50 per cent . . . . . . . . . . . . . . . . . . . . . . . . . . 2,340 24
                                                                        ─────────
                                                              $13,799 36
Kern Co., 35.64 miles R. R. at $13,799.36 per mile, $491,809.19,
  at $2.00 per $100 . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 9,836 18
San Bernardino Co., 206.87 miles R. R. at $13.799.36 per mile,
  $2,854,673.60, at $1.33 per $100 . . . . . . . . . . . . . . . . . . . . 37,967 15
                                                                        ─────────
                                                              $47,803 33
Proportion of $47,803.33 to total tax ($251,134.26), 19.03 per cent.
Add penalty . . . . . . . . . . . . . . . . . . . . . $12,556 66
Add attorney fees . . . . . . . . . . . . . . . . . . 18,877 22
                                                    ───────── $31,433 88
19 per cent. of $31,433.88 . . . . . . . . . . . . . . . . . . . . . . . . 5,981 87
                                                                        ─────────
                                                              $53,785 20

| | | |
|---|---:|---:|
| Amount brought forward............................... | | $53,785 20 |
| Interest from date of judgment, Feb. 5/93, to June 8/96, 3 years, 4 mos., 3 days, at 7 per cent. per annum.................... | | 12,580 36 |
| | | $66,365 56 |
| Less payments by company: | | |
| Bill rendered and paid, 1st Inst. of reassessment, Nov. 22, 1894..................................... | $14,902 86 | |
| Interest Nov. 22/94, to June 8/96, 1 year, 6 mos., 16 days, at 7 per cent............................. | 1,611 16 | |
| Interest on tender of 2d Inst. of reassessment, Apr. 25/95, to June 8/96, 1 year, 1 mo., 13 days, at 7 per cent ...................................... | 1,167 80 | |
| | | 17,681 82 |
| | | $48,683 74 |

"I certify the above to be correct. E. B. Ryan.

"Examined. George T. Klink.

"Approved. E. C. W.

"Payment should be made to the treasurer S. P. Co., San Francisco, Cal. If any item is questioned, or explanation is required, address General Auditor, San Francisco, Cal."

The Mercantile Trust Company and the United States Trust Company each filed an answer to the petition of the receiver. By its answer the former objected to the payment of any portion of the penalty or attorney's fees included in the bill in question, and the latter protested against the payment of any portion of the bill on the ground that the tax in question became delinquent and the penalty accrued prior to the appointment of either of the receivers, and that, while the claim may be valid against the Atlantic & Pacific Railroad Company, it is invalid as against its mortgage, and consequently not a proper charge against the receiver. Thereafter the Southern Pacific Railroad Company filed an intervening petition, asking the court to direct the payment of the bill rendered by it, to which the receiver and the United States Trust Company filed answers. The matters at issue were thereupon referred to a special master to take the proofs of the respective parties, and report the same, together with his findings of fact and conclusions of law, to the court. The report of the master was filed December 11, 1896, and to the report the Southern Pacific Railroad Company filed exceptions January 4, 1897. Thereafter the report and the exceptions thereto came on regularly for hearing, at which time the receiver, by leave of the court, amended his petition by so changing the clause therein in relation to the acknowledgment and ratification by the receivers of the contract of August 20, 1884, as to make it read as follows: "And that the receivers have not disavowed said contract; neither have said receivers affirmed said contract in any manner whatever, unless their acts with reference thereto shall in law be deemed to amount to an affirmance thereof."

The first and third findings of, the special master are to the effect that the Southern Pacific Railroad Company leased the line of railroad extending from The Needles to Mojave, with its appurtenances, to the Atlantic & Pacific Railroad Company, which company entered into possession thereof under such lease, and continued in such possession until the appointment of the receivers. To these findings the Southern Pacific Railroad Company excepted, on the ground that they are contrary to the terms and legal effect of the written contract of August 20, 1884.

The sixteenth finding is as follows: "The value of the leased property for the purposes of taxation for the year 1887, considered separately from any franchises or rolling stock (and taking into consideration the fact, which I find to be true, that the cost of operating the leased property has for many years prior and subsequent to the appointment of the receivers herein exceeded its earnings), was $4,000 per mile, or a total of $969,480, which is 5.39 per cent. of the entire valuation of the franchises, roadway, roadbed, rails, and rolling stock of the Southern Pacific Railroad Company in California, as fixed by the state board of equalization for that year." To this finding the Southern

Pacific Railroad Company excepted on the ground that all of the testimony upon which it is based was erroneously admitted, and was objected and excepted to by the intervener at the time, and upon the ground that the finding is unsupported by the evidence as given, and is not a finding of the value of the property for the purpose of taxation for the year 1887, considered separately from any franchises or rolling stock, and, further, is in entire disregard of the contract of August 20, 1884.

The nineteenth finding is as follows: "I find that 5.39 per cent. of $251.-154.26, the amount of the original tax for 1887, without interest or penalties, amounts to the sum of $13,536.13." To this finding the intervener excepted, upon the ground that it is not within the issues presented by the pleadings.

The twenty-second finding is as follows: "I find that the action of the intervener, the Southern Pacific Railroad Company, in refusing to pay the said taxes levied and assessed for the fiscal year of 1887, ending June 30, 1888, and in defending the said suit of the state of California therefor, was wholly voluntary upon its part, and was in no manner induced or caused by any request, consent, or advice upon the part of the defendant the Atlantic & Pacific Railroad Company, represented by W. C. Hazeldine, its general attorney, or other attorney, officer, or agent having authority in the premises, or upon the part of the present or former receivers herein, or of any attorney or representative of such receivers." To this finding the intervener excepted, upon the ground that it is not only unsupported by, but is directly contrary to, the evidence in the case.

The twenty-third finding is as follows: "I find that while the original receivers and the present receiver have continued to operate and use the leased line of road since their respective appointments, the contract of lease dated August 20, 1884, has not been expressly or impliedly affirmed or adopted by them in such manner as to require the present receiver to pay the account of the intervener in question." To this finding the intervener excepted, on the ground that it is in conflict with the petition of the receiver, and with the answer filed thereto by the United States Trust Company of New York, and with the orders theretofore made by the court in the cause, and with the evidence in the case.

Exceptions were also taken by the Southern Pacific Railroad Company to all of the conclusions of law reported by the special master, the first of which is to the effect that the evidence offered and introduced before him, showing the respective amounts of taxes levied and assessed for the years 1883, 1884, 1885, and 1886, and subsequently reassessed and paid by the intervener, was irrelevant and immaterial, and should, together with the findings of fact based thereon, be disregarded. The second is to the effect that, although the amounts shown by the bill rendered by the intervening petitioner to the receiver were not paid until June 6, 1896, yet, inasmuch as such payments were made exclusively on account of taxes due for the fiscal year 1887, ending June 30, 1888, upon the assessment made by the state board of equalization for that year on all of the property of the Southern Pacific Railroad Company, including the Mojave Division, such payments do not, under the orders appointing the receivers, and under the facts shown by the evidence and found, constitute such an equitable claim, charge, or lien, as against the United States Trust Company, upon the property, or the earnings thereof in the hands of the receiver, as to require or justify the payment of the account, or any part thereof by the receiver. The third conclusion of law is to the effect that the evidence introduced by the respective parties before the master in reference to the justice and fairness of the total taxes levied for the year 1887 and other years upon the property of the intervener, which was charged by that company against the Atlantic & Pacific Railroad Company under the contract of August 20, 1884, was irrelevant and immaterial, and should, together with the findings of fact thereon, be disregarded. The fourth and last conclusion of law is to the effect that an order should be made and entered directing the receiver not to pay any part of the bill rendered by the intervening petitioner, the Southern Pacific Railroad Company, and that its petition in that behalf be dismissed.

The findings of the special master to which no exceptions were taken show, among other things, that the receivers originally appointed in this suit took

possession of the property described in the contract of August 20, 1884, and continued to operate it as a part of the Atlantic & Pacific Railroad until the appointment and qualification of the present receiver, who thereupon took possession of the property, and has ever since continued to operate it as a part of the Atlantic & Pacific Railroad; that the Southern Pacific Railroad Company returned its franchises, roadway, roadbed, rails, and rolling stock situated in the state of California, and subject to taxation by the state board of equalization, at the following valuation for the following years:

(A) For the franchise, roadway, roadbed, and rails, for the
year 1885................................................. $ 8,991,350
For the rolling stock..................................... 1,383,050
                                                          _____
    Total ................................................. $10,374,400

(B) For the year 1886, for the franchises, roadway, roadbed,
and rails ............................................... $ 9,991,300
For the rolling stock..................................... 1,387,300
                                                          _____
    Total ................................................. $11,378,600

(C) For the year 1887, for the franchises, roadway, roadbed,
and rails ............................................... $ 8,992,592
For the rolling stock..................................... 1,427,350
                                                          _____
    Total ................................................. $10,419,942

That the state board of equalization of the state of California increased the valuation as returned by the Southern Pacific Railroad Company for the years 1885, 1886, and 1887, as follows: "For the year 1885, the value of the franchises, roadway, roadbed, rails, and rolling stock was fixed by the state board of equalization at $17,000,000. For the year 1886 the value of the same property was fixed by the same board at $17,000,000. For the year 1887 the value of the same property was fixed by the same board at $16,500,-000." That the valuations so fixed by the state board of equalization of the state of California were so fixed for each year, respectively, as an entirety, and that the state board of equalization did not attempt to assess separately the value of either the franchises, the roadbed, roadway, or rails, or of the rolling stock, and that the evidence fails to show upon what, if any, particular class of property returned by the Southern Pacific Railroad Company for taxation for these years the increase in valuation was made. That the Southern Pacific Railroad Company successfully resisted in the courts the collection of the taxes assessed against it for the years 1885 and 1886 by the state board of equalization of the state of California. That in pursuance of legislation authorizing such action the state board of equalization of the state of California reassessed the property of the Southern Pacific Railroad Company in California for the years 1885 and 1886, and attempted to reassess the same property for the year 1887. That as a result of such reassessment the valuation of the said property as fixed by the state board of equalization for the years 1885 and 1886 was reduced as follows: "For the year 1885, to $9,570,200; for the year 1886, to $9,570,200." That the Southern Pacific Railroad Company paid the taxes so reassessed for the years 1885 and 1886, and the former receivers of the Atlantic & Pacific Railroad Company, appointed by this court January 8, 1894, paid to the Southern Pacific Railroad Company such proportion of said taxes as was demanded by the Southern Pacific Railroad Company, and at the time here stated; that is to say:

March 21, 1894........................................... $15,074 10
June 4, 1894............................................. 15,074 10
January 11, 1895......................................... 14,870 60
May 13, 1895............................................. 14,870 60
                                                         _____
    Total ................................................. $59,889 40

That of the taxes of the Southern Pacific Railroad Company for the year 1885 the amount apportioned to the Atlantic & Pacific Railroad Company as the

taxes of the Mojave Division, by the representatives of the Southern Pacific Railroad Company, on the basis of the original assessment would have been $52,517, and that interest on that sum at seven per cent. per annum to the date of actual payment would amount to $29,409; making a total amount of $81,296. That the apportionment for the year 1886 on the same basis would have been for taxes, $52,517, and for interest $29,400, making a total of $81,296, or a total for the two years of $162,592,—while, under the reassessment, the total amount paid by the Atlantic & Pacific Railroad Company for the years 1885 and 1886 was $59,889.40. That at the time the taxes for the years 1885 and 1886 were originally assessed, and for many years thereafter the Atlantic & Pacific Railroad Company was a solvent and going concern, while at the time of the reassessment in the years 1893 and 1894 it was insolvent, and in the hands of the receivers. The findings also show that of the amount of taxes, attorney's fees, interest, and penalties originally adjudged to be paid by the superior court of the city and county of San Francisco there was a deduction of interest amounting to $89,654.91, and of counsel fees amounting to $6,278.31, upon a review of that judgment by the supreme court of California, which was affirmed by the supreme court of the United States. That the total value of the franchises, roadway, roadbed, rails, and rolling stock of the Southern Pacific Railroad Company in California for the year 1887, as fixed by the state board of equalization, was $16,500,000. That of the taxes assessed against the Southern Pacific Railroad Company in California for the year 1887 the former receivers paid to the Southern Pacific Railroad Company, on the 11th day of January, 1895, the sum of $14,902.86, which sum was paid within a reasonable time after demand made therefor, and that no subsequent demand for payment of any portion of the remainder of the taxes for 1887, as claimed by the Southern Pacific Railroad Company, was ever made until the presentation of the bill here in question. The special master further found that on the 23d day of May, 1892, the Southern Pacific Railroad Company refunded to the Atlantic & Pacific Railroad Company the sum of $25,924.39 upon a demand by the Atlantic & Pacific Railroad Company, and, upon a voucher made by the representatives of the latter company, for excessive taxes theretofore paid by the Atlantic & Pacific Company to the Southern Pacific Railroad Company, as follows:

| | |
|---|---|
| For the year ending June 30, 1885 | $ 1,926 66 |
| For the year ending June 30, 1889 | 6,871 29 |
| For the year ending June 30, 1890 | 9,181 17 |
| For the year ending June 30, 1891 | 7,945 27 |
| Making a total of | $25,924 39 |

Upon the hearing of the exceptions it was stipulated and agreed by and between counsel for the respective parties that all papers referred to or mentioned in the exceptions should be considered to the same extent and with the same force and effect as if offered upon the hearing before the master, and that, in addition to the papers mentioned in those exceptions, the petition of the United States Trust Company of New York, filed in this court, praying leave of the court to institute suit against the receivers appointed in this cause, with the bill of complaint attached to that petition, and the order of the court made thereon, should be considered with the same effect as if offered in evidence before the master, and that the petition of the receivers of the Atchison, Topeka & Santa Fé Railroad Company to the court originally appointing them, and the order of that court based thereon, asking leave to disaffirm the contract of lease attached to the petition of the receiver herein, and also the petition of the receivers of the St. Louis & San Francisco Railway Company to the court originally appointing them, and the order of that court based thereon, for like leave to disaffirm the said contract, and also the answer and objections of the United States Trust Company of New York to the application of the receivers for leave to borrow money, which answer and objections were filed in this court on the 14th day of May, 1895, should be considered with the same effect as if offered in evidence before the master. It was further stipulated that none of the parties to the present record were parties to the proceedings in which the attempted disaffirmance took place

nor had any notice thereof; the stipulation, however, reserving any and all objections to the materiality, relevancy, and admissibility of any of such papers and evidence.    80 Fed. 18–31.

As previously stated, the court below sustained all of the exceptions taken by the Southern Pacific Railroad Company to the findings of fact and the conclusions of law of the special master, and directed the payment of the amount claimed by the intervener as taxes, from which order and decree the present appeal is prosecuted by the United States Trust Company.    There are 14 assignments of error.

C. N. Sterry and Neill B. Field, for appellant.

Harvey S. Brown and J. E. Foulds (J. S. Chapman, of counsel), for intervener and appellee Southern Pac. R. Co.

Before GILBERT and MORROW, Circuit Judges, and HAWLEY, District Judge.

MORROW, Circuit Judge, after stating the case as above, delivered the following opinion:

The ultimate question presented for determination on this appeal is whether or not the claim of the intervener and appellee, the Southern Pacific Railroad Company, against the Atlantic & Pacific Railroad Company, an insolvent corporation, for a just proportion of the taxes paid by the Southern Pacific Railroad Company for the fiscal year 1887–1888, under its agreement of August 20, 1884, with the Atlantic & Pacific Railroad Company, should be paid by the receiver of the Atlantic & Pacific Railroad Company in preference to the mortgage lien of the United States Trust Company, the appellant.    The determination of this question depends upon the consideration of three leading propositions, to wit:    (1) Is the Atlantic & Pacific Railroad Company liable to the Southern Pacific Railroad Company, under the conditions of the agreement of August 20, 1884, for its just proportion of taxes for the fiscal year 1887–1888?    (2) If so liable, does such a claim for taxes constitute a preferential claim to that of the mortgage lien?    (3) If it does, in what amount should such taxes be allowed, and should a just proportion of the sum paid by the Southern Pacific Railroad Company for attorney's fees, costs of suit, interest, etc., incurred in litigating and contesting the taxes for the fiscal year 1887–1888, be also allowed and reimbursed to the latter company by the receiver of the Atlantic & Pacific Railroad Company?    Before entering into a consideration of these propositions, there is a preliminary question to be disposed of, and that is as to the effect to be given to the findings of fact of the special master.    It is contended, at the outset, by the counsel for the appellant, that this court and the court below are bound by the findings of fact made by the special master.    It will be observed that the reference, by the court below, to the special master, of the claim for taxes made by the intervener, the Southern Pacific Railroad Company, was not that of an ordinary reference to take and report testimony, but it was stipulated and agreed between counsel representing all the parties that the special master should "take the

proofs of the respective parties, and report the same to the court, with his findings of fact and conclusions of law thereon." The effect of this stipulation was undoubtedly to constitute, to a certain extent, the special master as the judge of the facts presented to him. The scope and effect of such a stipulation is tersely stated by Mr. Justice Brown, delivering the opinion of the United States supreme court in Davis v. Schwartz, 155 U. S. 631, 636, 15 Sup. Ct. 237, 239, in the following language:

"As the case was referred by the court to a master to report, not the evidence merely, but the facts of the case, and his conclusions of law thereon, we think that his findings, so far as it involves questions of fact, is attended by a presumption of correctness similar to that in the case of a finding by a referee, the special verdict of a jury, the findings of a circuit court in a case tried by the court under Rev. St. § 649, or in an admiralty cause appealed to this court. In neither of these cases is the finding absolutely conclusive, as if there be no testimony tending to support it; but, so far as it depends upon conflicting testimony, or upon the credibility of witnesses, or so far as there is any testimony consistent with the finding, it must be treated as unassailable."—citing Wiscart v. D'Auchy, 3 Dall. 321; Bond v. Brown, 12 How. 254; Graham v. Bayne, 18 How. 60, 62; Norris v. Jackson, 9 Wall. 125; Insurance Co. v. Folsom, 18 Wall. 237, 249; The Abbotsford, 98 U. S. 440.

See, further, Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355; Crawford v. Neal, 144 U. S. 585, 596, 12 Sup. Ct. 759; Furrer v. Ferris, 145 U. S. 132, 12 Sup. Ct. 821.

So far, therefore, as the findings of fact by the special master, under the stipulation referred to, are based upon conflicting evidence, or upon the veracity of witnesses, or so far as there is evidence consistent with the finding, they are conclusive and binding upon the court. But, in so far as other and additional evidence is introduced before the court, the rule is inapplicable. In this case it appears that after the special master had reported, and filed his findings of fact and conclusions of law, it became necessary to introduce further evidence. To obviate a re-reference, the parties entered into a stipulation consenting to the introduction of certain documentary evidence, referred to above in the statement of the case, and stipulated further that none of the parties in this case were parties to the proceedings in which the attempted disaffirmance took place, nor had any notice thereof. The effect of this stipulation and of the introduction of the documentary evidence referred to was to render the rule inapplicable so far as the evidence may be deemed material and relevant to any of the findings of fact by the special master. Furthermore, the rule is confined strictly to questions of fact. It does not include questions of law, nor, generally speaking, the interpretation and construction of the legal effect of documents. In the case at bar the special master interpreted the agreement of August 20, 1884, to be a lease, and made findings of fact to that effect. Upon exceptions taken to these findings, the court below interpreted the agreement as a contract of sale, thereby overruling the special master. It is plain that the findings of fact of the special master as to the legal effect of the instrument in question were no more binding upon the court below than is the interpretation placed by the court below on the same

instrument conclusive on this court upon the present appeal. In this view it follows that findings of fact (Nos. 1 and 3) of the special master, in which he found that the agreement of August 20, 1884, was a lease, were not binding on the court below, and that that court was correct in exercising its own independent judgment as to the interpretation to be given the agreement. In so doing the learned judge held that the agreement was a contract of sale, and that the lease features of the agreement were merely incidental; but in arriving at this conclusion we think he did not give the lease features of the agreement the importance and prominence they deserve, and which the parties intended. The agreement of August 20, 1884, was of a dual character. It was a contract to sell and a lease. That it was intended to be, and was, an executory contract of sale, is plainly deduced from the language employed, as appears from the terms set forth in the statement of the case. The Southern Pacific Railroad Company agreed to sell to the Atlantic & Pacific Railroad Company, and the latter agreed to buy from the former, the line of railway extending from the west end of the bridge over the Colorado river, at or near The Needles, to the easterly margin of the grounds or yards of the Southern Pacific Railroad Company used in connection with the Mojave Junction station, or with the main line of road of the Southern Pacific Railroad Company between Goshen and Yuma, in the state of California, some 242.32 miles in length. But it affirmatively appears from the agreement itself that the Southern Pacific Railroad Company could not, at that time, owing to the existence of a certain mortgage covering the property in question, transfer a clear title to the road. Nor does the agreement state, in this particular, when it could or would be able to convey a clear title. It therefore simply contracted to transfer a good title when it was able to do so. This part of the agreement is what constitutes it an executory agreement or contract of sale. Then the agreement further specifically provides that meanwhile, and until the consummation of the sale, and payment of the purchase price of the property, the Southern Pacific Railroad Company would lease and demise to the Atlantic & Pacific Railroad Company, from the 1st day of October, 1884, the said line of railway, together with the appurtenances, in the contract agreed to be sold, at and for the annual rental of $1,800 per mile,—that is to say, $436,266,—payable semiannually during the continuance of the lease. For the purposes of the lease, the Atlantic & Pacific Railroad Company was put in full possession of the line of railway. It was further distinctly provided that, in the event of any default by the Atlantic & Pacific Railroad Company in its payment of the rental for the lease as agreed, the Southern Pacific Railroad Company should retake possession. All through the agreement it will be found that there is a clear, distinct and unequivocal intent that the railway should be leased until the consummation of the sale, and full provision is made as to the rights and liabilities of the respective parties with reference to the sale of the property and as to its lease. The distinction between the sale and lease features of the agreement is maintained throughout. The eighth clause, in

particular, exemplifies this, for it provides that "the said party of the first part covenants and agrees to and with the party of the second part that upon the arrival of the time for the consummation of the sale hereinbefore agreed upon it will convey the property sold to the party of the second part by good and sufficient deed with usual covenants of warranty; and that during the term of said lease, the rent reserved being paid and all other terms of said lease being fulfilled, it will warrant and defend the peaceful occupation and enjoyment of the demised premises, and of every part thereof, to the party of the second part against the lawful claims of all persons." But it is unnecessary to elaborate further on the double nature and purpose of the agreement. A careful reading of it will demonstrate without doubt that, until the consummation of the sale, the line of railway was to be leased. The distinction between these two features of the agreement is too plain to justify us in holding with the learned judge of the court below that the lease was a mere incident of the contract. There is no good reason why, if parties choose so to contract, they may not agree to lease a property, and, upon the happening of a future act or contingency, mature the lease into a sale. We conclude, therefore, that the agreement of August 20, 1884, was of the dual character referred to, and had a twofold purpose; or, in other words, it operated as an executory contract of sale, but until the consummation of the sale it was agreed that there should be a lease of the property. This view disposes of the contention of counsel for appellant, earnestly pressed on the court, that, if the agreement be regarded as a contract of sale, it is void, because under the laws of California, as is contended, railroad companies have no power to sell their roads, or any part thereof. But, whatever may be the law of California on that question, and assuming, for the purposes of the case, although not deciding, that such is the law, this would not affect and invalidate the agreement of August 20, 1884, in so far as it operates as a lease. That a contract may be void in part and valid in part is elementary law. We have seen how studiously the two features of the agreement, viz. that of sale and of lease, were kept separate and distinct. Assuming, therefore, that the agreement is void as a contract of sale, still it would be valid as a lease. Chicago, St. L. & N. O. R. Co. v. Pullman South. Car Co., 139 U. S. 79, 91, 11 Sup. Ct. 490; Erie Ry. Co. v. Union Locomotive & Express Co., 35 N. J. Law, 240, 246; Treadwell v. Davis, 34 Cal. 601; Lumber Co. v. Hayes, 76 Cal. 387, 393, 18 Pac. 391. That railroad companies have the power to lease their roads, or any part thereof, is expressly provided for by the act of 1880. St. Cal. 1880, p. 21. Under section 17 of its charter, the Atlantic & Pacific Railroad Company had the "power" to lease. Act July 27, 1866 (14 Stat. 292). One of the provisions of the agreement, in so far as it was a lease, was that the Atlantic & Pacific Railroad Company should "promptly pay and discharge all taxes and assessments which should thereafter become due upon said property, or any part of it, or which might become in any wise due or owing in respect to the same." This provision was binding on the lessee so long as the lease endured. When the receivers were

appointed, they did not disaffirm the lease. On the contrary, it was affirmed by their continued use and occupation of the line of railway. Such being the fact, the Atlantic & Pacific Railroad Company was bound to perform its agreements under the lease, and, among others, to pay its just proportion of taxes. In fact, one of the conditions of the receiverships was that all taxes then due should be paid. This disposes of the first question, viz. whether the Atlantic & Pacific Railroad Company was liable to the Southern Pacific Railroad Company, under the conditions of the agreement of August 20, 1884, for its just proportion of taxes for the fiscal year 1887–1888, and brings us to the second and third propositions involved on this appeal, which will, for the sake of convenience, be considered together. The second proposition is whether or not such claim for taxes constitutes a preferential claim to that of the mortgage liens; and the third is, if it does constitute a preferential claim, in what amount should it be allowed?

With reference to the second proposition, we think there is no room for doubt that this claim for taxes constitutes a preferential claim to that of the mortgage liens. In the first place, it was made a condition of the receivership. In the order appointing the original receivers, the court below directed them, among other things, to pay "all amounts now due from the defendant (the Atlantic & Pacific Railroad Company) on its roads or properties constituting part of its system for taxes and assessments upon the property, or any part thereof." The subsequent order, appointing the present receiver, contained similar directions. In the second place, the agreement of August 20, 1884, under which the taxes were due, never having been disaffirmed by the receivers, it follows that it still continued in force, and the Atlantic & Pacific Railroad Company was subject to all the obligations thereunder just as much as it was entitled to all the advantages and benefits thereunder. The language of the learned judge of the court below, in this connection, is pertinent. He said:

"The evidence in the case, as well as those findings of the special master not excepted to, show that the receivers not only paid, from time to time, every installment of rental that has become due under the contract of August 20, 1884, but also all of the taxes that have become due on the property therein described, except the portion of the taxes for the year 1887 here in controversy. And the evidence also shows that several of these installments of rental were paid with money borrowed by the receivers upon receivers' certificates authorized to be issued for that purpose by this court, upon representations made by the receivers, not only showing the necessity of borrowing because of a lack of funds, but also showing that the line of road forming the subject of the contract of August 20, 1884, is an essential part of the Atlantic & Pacific Company's railroad system, and constitutes the only western outlet and inlet by rail for traffic moved over that system, and has been in the continuous and exclusive possession, use, and control of that company, and the receivers of its property, from the time that company first took possession of the property under the contract in question. Those representations by the receivers are, in effect, admitted to be true by the various pleadings filed in the cause by the Mercantile Trust Company and the United States Trust Company, respectively. If, therefore, it be conceded that the contract of August 20, 1884, ever admitted of disaffirmance by the receivers, it has been affirmed over and over again by them, and it is now too late for either of the parties to the present suit to here set up any right of election in respect thereto."

It further appears that on January 11, 1895, the former receivers of the Atlantic & Pacific Company paid the sum of $14,902.86 on account of the very taxes now in question. The present claim is, therefore, merely for the balance claimed to be due. We think, on the whole, that the taxes for the fiscal year 1887–1888 were due, although the precise amount thereof may not have been ascertained until the decision of the United States supreme court (162 U. S. 167, 16 Sup. Ct. 794) in the case involving the liability of the Southern Pacific Railroad Company for the taxes was rendered, and that the orders appointing the receivers were broad enough to include the proportion of taxes due by the Atlantic & Pacific Railroad Company to the Southern Pacific Railroad Company for that year, and that such proportion of taxes is entitled to preference over the mortgage lien.

We next inquire as to the proportion of the taxes for 1887–1888 which the Atlantic & Pacific Railroad Company was called upon to reimburse to the Southern Pacific Railroad Company under its agreement of August 20, 1884. Undoubtedly, the laws of the state of California, under which the taxes were assessed and collected, entered into and became part of the agreement with respect to the payment, by the Atlantic & Pacific Railroad Company, of the taxes assessed upon the leased line of railway. By the law of the state the taxes are assessed against the owner. The taxes for the fiscal year 1887–1888 were, therefore, assessed against the Southern Pacific Railroad Company, the lessor of the line of railway involved in the present controversy, and not against the Atlantic & Pacific Railroad Company, the lessee. The valuation returned by the Southern Pacific Railroad Company on its franchise, roadbed, rails, rolling stock, etc., within the state of California, including the line of railway from The Needles to Mojave, was $9,570,200. This valuation was raised by the state board of equalization to $16,500,000. The Southern Pacific Railroad Company contested this increase, but the tax was upheld by the courts. 38 Pac. 912; 162 U. S. 167, 16 Sup. Ct. 794. No question, therefore, of the validity or legality of the tax can now be indulged in, nor can the amount thereof be inquired into. The only question with which the court below was concerned, and which is involved on this appeal, is as to the proportionate amount which the Atlantic & Pacific Railroad Company is to repay to the Southern Pacific Railroad Company. The amount of tax imposed on the valuation of $16,500,000 for 1,022.33 miles of railway was $251,134.26, or at the rate of $16,139.60 per mile, which of course, included rolling stock, etc. The number of miles of railway leased by the Atlantic & Pacific Railroad Company from the Southern Pacific Railroad Company was some 242.37 miles, of which 35.64 miles were in Kern county and 206.87 miles were in San Bernardino county. As the Atlantic & Pacific Railroad Company did not lease the rolling stock of the Southern Pacific Railroad Company, but only its line of railway in the two counties referred to, a certain percentage was allowed by the Southern Pacific Railroad Company in computing the amount due from the Atlantic & Pacific Railroad Company for the proportion of taxes due from the latter company to the former under their agree-

ment of August 20, 1884. This percentage for the year 1887–1888 was fixed by the Southern Pacific Railroad Company at 14.50 per cent., which amount has not been questioned in this controversy, and must, therefore, be taken as correct. Allowing for this percentage for rolling stock, would make the tax per mile the sum of $13,799.36, and the amount due from the Atlantic & Pacific Railroad Company to the Southern Pacific Railroad Company would be as follows:

| | |
|---|---:|
| Kern county, 35.64 miles railway at $13,799.36 per mile, $491,809.19 at $2 per $100 | $ 9,836 18 |
| San Bernardino county, 206.87 miles railway at $13,799.36 per mile, $2,854,673.60, at $1.33 per $100 | 37,967 15 |
| | $47,803 33 |

This total of $47,803.33, according to the rate of taxation fixed by the law of the state of California, through its assessing officers, and confirmed by the tribunals of the state and of the United States supreme court, fixes the amount due from the Atlantic & Pacific Railroad Company as its just proportion of taxes due to the Southern Pacific Railroad Company, and this was the amount paid by the latter company to the state. The special master, in this connection, found (finding No. 16) that:

"The value of the leased property, for the purposes of taxation for the year 1887, considered separately from any franchises or rolling stock (and taking into consideration the fact, which I find to be true, that the cost of operating the leased property has for many years prior and subsequent to the appointment of the receivers herein exceeded its earnings), was $4,000 per mile, or a total of $969,480, which is 5.39 per cent. of the entire valuation of the franchises, roadway, roadbed, rails, and rolling stock of the Southern Pacific Railroad Company in California, as fixed by the state board of equalization for that year."

Upon exceptions, this finding was overruled by the court below. In this, we think, the court was entirely correct. The evidence objected to and admitted, tending to show what the earnings of the Atlantic & Pacific Railroad Company were for the year 1887 and prior thereto, was erroneously admitted, and was irrelevant, and incompetent to fix the tax due by the Atlantic & Pacific Railroad Company to the Southern Pacific Railroad Company for the year 1887–1888. The taxes which were comprehended and contemplated by the agreement of August 20, 1884, were those fixed by law. The taxes in the present instance are based upon the assessment and apportionment made by the state board of equalization, under the provisions of the constitution and laws of the state of California, and that assessment and apportionment were held to be valid by the superior court of the city and county of San Francisco, by the supreme court of the state of California, and finally by the supreme court of the United States. The admission of the evidence tending to show any other basis or rate of taxation was, in effect, a collateral attack upon the assessment and apportionment of the state board of equalization, and also upon the judgment and decision of the courts, which sustained the validity of the assessment. Unsupported by the evidence which, we hold, has been erroneously admitted, the findings cannot stand. The nineteenth finding of the special

master was to the same effect, was overruled by the court below, and, we think, properly so.

Several other objections are presented by counsel for appellant as to the validity of the tax, but, as we consider them untenable, it is not necessary, in our opinion, to protract this already lengthy opinion, by a detailed consideration of them. It follows, from the views stated, that the taxes for which the Atlantic & Pacific Railroad Company was liable to repay and reimburse the Southern Pacific Railroad Company under its agreement of August 20, 1884, and the laws of the state of California with reference to the taxation of the line of railway in question, as sustained by the decisions of the courts previously referred to, was the sum of $47,803.33, less any sum which the Atlantic & Pacific Railroad Company may have previously paid on account of these taxes. It appears that it had paid to the Southern Pacific Railroad Company the sum of $14,902.86 on a reassessment for the fiscal year 1887–1888. This amount, with certain items of interest credited by the Southern Pacific Railroad Company, would amount to the sum of $17,681.82, which should be deducted from the amount of taxes as stated above, leaving a balance as follows: $47,803.33, amount of taxes for fiscal year 1887–1888; $17,681.82, amount credited; $30,121.51, balance due for taxes.

The next and final question is whether the Atlantic & Pacific Railroad Company should reimburse the Southern Pacific Railroad Company for a just proportion of the attorney's fees, costs of suit, interest, etc., incurred by the latter company in contesting and litigating the taxes for the fiscal year 1887–1888. When the taxes for the year 1887–1888 were assessed by the state board of equalization at the increased valuation of $16,500,000, the Southern Pacific Railroad Company contested the same. It was, however, unsuccessful in the litigation, and, in addition to having to pay the full amount of the tax imposed, amounting, as stated, to $251,134.26, incurred certain additional expenditures, such as accrued penalties, costs of suit, attorney's fees, interest, etc. In the bill presented by it to the Atlantic & Pacific Railroad Company, it sought to charge that company with a certain proportion of these additional costs. The proportion charged was fixed at 19.03 per cent. that being the percentage which the sum of $47,803.33, the amount of taxes charged to the Atlantic & Pacific Railroad Company, bore to the total tax of $251,143.26, charged as taxes against the Southern Pacific Railroad Company. The special master found that the Atlantic & Pacific Railroad Company was not called upon to reimburse the Southern Pacific Railroad Company for its expenses incurred in that behalf, as he found the fact to be that the "action of the intervener, the Southern Pacific Railroad Company, in refusing to pay said taxes levied and assessed for the fiscal year of 1887, ending June 30, 1888, and in defending the said suit of the state of California therefor, was wholly voluntary upon its part, and was in no manner induced or caused by any request, consent, or advice upon the part of the defendant the Atlantic & Pacific Railroad Company, represented by W. C. Hazeldine, its general attorney, or other attorney, officer, or

agent having authority in the premises, or upon the part of the present or former receivers herein, or of any attorney or representative of such receivers." The court below, in passing upon the exception taken to this finding, sustained the exception, and held that the Atlantic & Pacific Railroad Company was liable for a proportionate share of the penalty, costs, attorney's fees, interest, etc., incident to the litigation, and fixed such proportion at 19.03 per cent. as charged in the bill presented by the Southern Pacific Railroad Company to the Atlantic & Pacific Railroad Company. The learned judge based this determination on the ground that the evidence tended to show that Mr. Hazeldine, as solicitor for the Atlantic & Pacific Railroad Company, had authority to act as such solicitor for the company in respect to the matter of these taxes, and that he, as such solicitor, consulted with the legal representatives of the Southern Pacific Railroad Company in connection with the very taxes in question, and acquiesced in and consented to the contest made by the Southern Pacific Railroad Company against the taxes in question. In this, we think, the learned judge was correct. Had the Atlantic & Pacific Railroad Company desired to avoid the additional penalty, attorney's fees, interest, and costs incurred by a failure to pay the taxes when due and when contested, it could have offered its part of the taxes, and thereby absolved itself from any liability in that direction. From the foregoing opinion it follows that the claim of the Southern Pacific Railroad Company for taxes for the fiscal year 1887–1888 should be allowed and paid by the receiver, amounting, after crediting certain sums previously stated, to the balance of $30,121.51, and that that part of the claim which relates to the proportion claimed for interest, costs of suit, attorney's fees, etc., be allowed as charged in the bill. The judgment and decree of the circuit court will be affirmed.